# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO
_____

GINA J. CHAVEZ,

        Plaintiff,

vs.                                                                          Civil NO. 98-173 JP/WWD

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

1.   This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed October 19, 1998 [9-1].  The Commissioner denied Plaintiff's request for Supplemental Security Income ("SSI") benefits.  Plaintiff, now age 28, alleges a disability which commenced November 20, 1993, due to a malformation near the brain stem, and broken blood vessels which leak, causing numbness of the head and leg and double vision in her right eye.  Plaintiff has a tenth grade education and has cosmetology training and a beautician's license.

2.   The Commissioner denied Plaintiff's application for benefits both initially and on reconsideration.  After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") denied the applications, concluding that Ms. Chavez has a severe impairment, but that she can return to her past relevant work as a hairstylist.  The Appeals Council declined to review the ALJ's decision, thus the ALJ's decision is the final decision of the Commissioner.  Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

3.   The standard of review in social security appeals is whether the Commissioner's final

decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

4. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the ALJ did not develop the case properly at the Listing step [step three] of the sequential evaluation; (2) the ALJ's findings regarding Ms. Chavez' nonexertional impairments are not supported by substantial evidence and are contrary to law; (3) the ALJ's analysis regarding Ms. Chavez' ability to return to her past relevant work is not supported by substantial evidence and is contrary to law.

5. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486; 42 U.S.C. § 1382c(a)(3)(A). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. § 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

6. At the first four levels of the evaluation, the claimant must show: (1) that she is not working; (2) that she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that she is unable to perform work done in the past. At step five, the burden shifts to the Commissioner to show that the claimant has a

2

residual functional capacity ("RFC") to do work in the national economy other than past relevant work. <u>Thompson</u> at 1487 (citations omitted).

7. Ms. Chavez has a cavernous malformation of her brain stem. <u>Tr. at 82</u>. In November 1993, Plaintiff first experienced symptoms of numbness on her left side and visual problems in her right eye which causes her to see double. <u>Tr. at 149</u>. She stopped working after this except sporadically for a few months in 1995. <u>Tr. at 146</u>. She was terminated from work in 1993 at a computer retail store because she was not completing assignments quickly enough. <u>Tr. at 146-47</u>. At the hearing, Ms. Chavez stated that she has headaches which are accompanied by numbness at the base of her skill about once a week. <u>Tr. at 147</u>. Her headaches last for about one hour. She has been taking Prozac for both the headaches and for her anxiety/depression. <u>Tr. at 148</u>.

8. Plaintiff cares for her two children, ages 9 and 5. She performs the usual household tasks of cooking, vacuuming, doing laundry and shopping. <u>Tr. at 150, 159</u>. She used to volunteer at the children's school but does not do so anymore. <u>Tr. at 151</u>. She has no hobbies, but does spend time reading, going to movies and swimming with the children. <u>Tr. at 151, 153</u>. Plaintiff stated that she doesn't sleep well because she lies awake worrying and thinking about the future. <u>Tr. at 153</u>. Ms. Chavez complains of feeling tired and fatigue, is depressed and spends time crying, but told the ALJ that she has not had these problems since taking Prozac. <u>Tr. at 148-49, 152</u>.

9. Plaintiff stated that about once a week, she forgets where she's going while driving the car, or forgets the turnoff, but is able to quickly find her way back. She admits to acting out in anger since the diagnosis of her condition. <u>Tr. at 158-59</u>. Ms. Chavez told the ALJ that she could probably work as a hairdresser were it not for her fatigue and for the numbness she would

feel having to stand all day.  Tr. at 153-54, 160.

**First Alleged Error**

10.    Plaintiff first alleges that the ALJ did not develop the case properly at step three of the sequential evaluation.  Plaintiff specifically alleges that her impairment meets or equals listing 11.04 ("Central nervous system vascular accident") because she has had left-sided numbness and weakness that affects her ability to walk and stand erect.  However, the relevant prong of that listing requires there to be "significant and persistent disorganization of motor function in *two extremities*, resulting in *sustained disturbance* of gross and dexterous movements, or gait and station."  (emphasis added).

11.    In this case, the medical evidence at this stage in Plaintiff's condition does not meet those requirements of that listing, or any other listings.  Although Plaintiff was found to have "some difficulty with tandem gait," the numbness was primarily over the medial aspect of the left leg only.  Tr. at 82.  A balance problem was noted, but there was not any difficulty with normal exertions of sitting, standing or walking.  Tr. at 165.

12.    Further, these symptoms cannot be considered as sustained problems, where they had resolved for about a two-year period before resurfacing.  Tr. at 82.  Although Plaintiff continued to experience numbness at the base of her skull (the frequency of which the ALJ found to be presented as inconsistent, see below), she had not had double vision problems from November of 1995 to about the time of the hearing.  Tr. at 157.  The ALJ's findings are supported by the testimony at the hearing by Dr. Edwin Cruz, the medical expert who specializes in internal medicine, pulmonary diseases and critical care.  Tr. at 164-65.  He noted that Plaintiff's condition had stabilized for the time.  Conservative treatment for her symptoms (such as headache) was

4

therefore recommended unless the lesion enlarged and started causing other problems, at which point, surgical treatment would then be considered.  <u>Tr. at 82, 162, 166</u>.

13.    Neither was the ALJ incorrect to find that Plaintiff's impairments did not "equal" a listed impairment.  A claimant who seeks to show that his impairment is "equivalent" to a listed impairment must present medical findings equal to all the criteria for that impairment.   <u>Sullivan v. Zebley</u>, 493 U.S. 521, 531 (1990).  Medical findings of left-sided numbness and diplopia are not medically equivalent to any of the requirements in the listing.  <u>See</u> <u>Kemp v. Bowen</u>, 816 F.2d 1469, 1473 (10th Cir.1987)(A finding that an impairment is medically equivalent to a listed impairment must be based solely on medical evidence).  20 C.F.R. § 416.926(b).

14.    Plaintiff points out that the ALJ should have selected a medical expert ("ME") whose expertise is most appropriate to the claimant's diagnosed impairment.  In Plaintiff's case, a neurologist or neurosurgeon probably would have had more expertise in the area of Ms. Chavez' type of impairment.  <u>See</u> <u>Hallex</u>[1] I-2-536(A).  However, this oversight does not necessarily require remand or reversal.  First, medical evidence from the record supports the ALJ's findings, even without Dr. Cruz' testimony.  Second, the ALJ retains the discretion over whether an ME should be consulted in the first place.  I-2-536(C).  Thus, the first allegation of error has no merit.

**Second Alleged Error**

15.    Plaintiff next alleges that the ALJ's findings regarding Ms. Chavez' nonexertional impairments are not supported by substantial evidence and are contrary to law.  Critical to this allegation is whether the ALJ's finding of noncredibility as to disabling symptoms is supported by

---

[1]  Hearings, Appeals and Litigation Law Manual (containing instructions for ALJ's and the Appeals Council).

the evidence.  The ALJ based this determination on the proper factors, which included not only the medical evidence but also Plaintiff's history of treatment, progress of treatment, frequency of complaints of symptoms, relief received from Prozac, daily activities, and inconsistencies in testimony.  Tr. at 15; see Luna v. Bowen, 834 F.2d 161, 166 (10th Cir. 1987).

16.    After the initial onset of symptoms in November 1993, where a 6th nerve paresis was found, Dr. Friedman noted in December that Ms. Chavez had diplopia with limitation of motion of the right eye, and numbness of her head and leg, but that numbness of her left arm had decreased. Tr. at 107.  In January 1994, neurologist Dr. Iqbal noted that Plaintiff's symptoms (including the diplopia) were getting better.  Tr. at 106.  The following month, when Plaintiff was hospitalized for complaints of diplopia which had lasted two days, Dr. Friedman opined that although she had an "unexplained neurologic event" Ms. Chavez did not have a thrombotic event.  Tr. at 104.

17.    About a year later, in November 1995, Plaintiff was hospitalized again for diplopia on right lateral gaze and paresthesias and numbness in her left lower extremity.  The discharge note stated that there had been no symptoms after six months of follow-up since the last hospitalization, until the November 1995 hospitalization.  Tr. at 112.

18.    Plaintiff's double vision was reported as "intermittent."  Tr. at 28.  As for her headaches, the ALJ noted inconsistencies in their stated frequency.  Ms. Chavez reported a decreasing frequency of these headaches to her doctor (about once a month) in March 1996, Tr. at 131, but told the ALJ at the hearing that she was getting them once a week.  Tr. at 147. However, she also stated that Prozac relieved her headaches and her depression.  Tr. at 148-49, 152.  See Pacheco v. Sullivan, 931 F.2d 695, 698 (10th Cir. 1991) (an impairment that can reasonably be remedied or controlled by treatment cannot support a finding of disability).  Because

the ALJ based his determination of noncredibility on substantial evidence from the record and according to the correct legal standard, his findings regarding Ms. Chavez' nonexertional impairments were not in error.

**Third Alleged Error**

19. However, I find that there is merit to Plaintiff's last allegation of error, which is that the ALJ's analysis regarding Ms. Chavez' ability to return to her past relevant work is not supported by substantial evidence and is contrary to law.

20. At step four, the ALJ engages in a comparative assessment of the claimant's residual functional capacity and the demands of the work the claimant has done in the past to determine whether the claimant can do her past relevant work. Hinkle v. Apfel, 132 F.3d 1349 (10th Cir. 1997); See 20 C.F.R. § 1520(e); SSR 96-8p. This stage in the evaluation is comprised of three phases.

21. In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity ("RFC") to engage in work on a regular and continuing basis; in the second, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996); SSR 82-62.

22. Light work requires standing or walking for six hours out of an eight hour workday, lifting no more than twenty pounds at a time, and frequent carrying of objects weighing up to ten pounds at a time. See 20 C.F.R. 1§ 404.1567(b), § 417/078(b). The requirement of standing is the primary difference between sedentary and most light jobs. SSR 83-10. This difference turns

out to be especially critical here, and it is at this point where the ALJ's analysis falls short.

23.   Dr. Cruz opined at the hearing that sedentary work would probably be more appropriate in light of balance problems which occurred when Plaintiff stood for long periods of time, and numbness problems on the left side.  Tr. at 160-67.  Nevertheless, the ALJ found that Ms. Chavez could perform work as a hairdresser, even though the job is categorized in the Dictionary of Occupational Titles as light work requiring walking or standing to a significant degree.  Pltff's Ex. A.[2]  Also, although it is not clear whether Plaintiff needs any kind of assistance to walk, in November 1995 before she was discharged from the hospital, she was provided with a cane for assistance with walking.  Tr. at 112.

24.   The third phase of the RFC analysis at step four could not be done because the ALJ did not perform an analysis at the second phase in order to determine whether Ms. Chavez could perform the specific physical and mental demands of work as a beautician, her past relevant work. Accordingly, the case should be remanded for a proper and complete evaluation at step four.

25.   In sum, I find that (1) the ALJ developed the case properly at the Listing step [step three] of the sequential evaluation; and (2) the ALJ's findings regarding Ms. Chavez' nonexertional impairments are supported by substantial evidence and were done based on the proper legal standard. However, I find that the ALJ's analysis regarding Ms. Chavez' ability to return to her past relevant work is not supported by substantial evidence and is contrary to law.

---

[2]  If the vocational and disability reports the claimant submits are not sufficient to match the claimant's past relevant work with a job description in the Dictionary of Occupational Titles ("DOT"), then the ALJ must develop testimony from the claimant at the hearing or obtain further information from the claimant's employers.  Lohse v. Shalala,  28 F.3d 113, unpubl. op., 1994 WL 263699 *3 (10th Cir. Colo).  Here, there was insufficient evidence even to support a match with the DOT description.

**Recommendation**

I recommend that  Plaintiff's Motion to Reverse and Remand for a Rehearing [9-1] be granted and that this cause be remanded to the Commissioner so that a proper step four analysis can be performed, including all three phases of a step four analysis to make a determination on Plaintiff's residual functional capacity to perform her past relevant work as a beautician.  If necessary, the Commissioner should obtain vocational testimony or information from other sources as an aid in making a determination at this step.

_____
UNITED STATES MAGISTRATE JUDGE